UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ADÉLIA RAMOS DE ALMEIDA,

                      Plaintiff,

       - against -

THE CITY OF NEW YORK, DAVID FREUND,
JONATHAN GUILLEN, ANDREW NYBERG,
LINDSAY PENA, MOUNT SINAI HEALTH
SYSTEM, INC., MOUNT SINAI MORNINGSIDE
HOSPITAL, JANET HAAG, STEVEN BLOSSY,
DICK LAM LEONG,

                    Defendants.
-------------------------------------------------------------------X

No. 22-CV-2792 (PAE)

**AMENDED COMPLAINT**

JURY TRIAL DEMANDED

       Plaintiff Adélia Ramos de Almeida, by her attorneys, The Fu Firm PLLC, respectfully alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

       1.      This is a civil rights action in which Plaintiff seeks relief for the violation of her rights secured by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State and City of New York.

       2.      On May 9, 2021, officers of the New York City Police Department ("NYPD") came to Plaintiff's apartment in response to a 911 call made by Plaintiff after she was struck by a security guard in her apartment building.

       3.      Instead of investigating the incident or taking a report, the officers, along with emergency medical technicians employed by Mount Sinai Morningside Hospital ("Mount Sinai Morningside"), dragged Plaintiff out of her apartment and forcibly took Plaintiff, in an ambulance owned by Mount Sinai Health System, Inc. ("MSHS"), to Mount Sinai Morningside for a

purported psychiatric evaluation even though the Defendants had no reason to believe that Plaintiff was a danger to herself or another person.

## JURISDICTION AND VENUE

4. This action arises under 42 U.S.C. §§ 1983 and 1988.

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

6. Supplemental jurisdiction exists over any and all state law claims that are related to the claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose within the confines of this judicial district.

8. On or about August 1, 2021, and within ninety (90) days after the claims herein accrued, Plaintiff served on the City of New York a timely Notice of Claim under New York General Municipal Law § 50-e.

9. In compliance with General Municipal Law § 50-h, a hearing was conducted on November 5, 2021.

10. At least thirty days have elapsed since the service of aforesaid notice of claim, and adjustment or payment thereof has been neglected or refused.

11. This action was commenced within one year and ninety days after the events upon which it is based.

## THE PARTIES

12. Plaintiff, Adélia Ramos de Almeida, is a resident of the State of New York. She resides within the Southern District of New York.

13. Defendant the City of New York (the "City") is a municipal corporation duly organized and existing under the laws of the State of New York. At all relevant times, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention, and conduct of all NYPD personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

14. Defendant David Freund ("Freund") was at all relevant times a Police Officer employed by the NYPD, acting under color of State law.

15. Defendant Jonathan Guillen ("Guillen") was at all relevant times a Police Officer employed by the NYPD, acting under color of State law.

16. Defendant Andrew Nyberg ("Nyberg") was at all relevant times a Police Officer employed by the NYPD, acting under color of State law.

17. Defendant Lindsay Pena ("Pena") was at all relevant times a Police Officer employed by the NYPD, acting under color of State law.

18. Defendant Mount Sinai Health System, Inc. is a domestic not-for-profit corporation organized and existing under the laws of the State of New York.

19. Defendant Mount Sinai Morningside Hospital is a domestic not-for-profit corporation organized and existing under the laws of the State of New York.

20. Defendant Janet Haag ("Haag") was at all relevant times an emergency medical technician ("EMT") employed by Mount Sinai Morningside.

21. Defendant Steven Blossy ("Blossy") was at all relevant times an EMT employed by Mount Sinai Morningside.

22. Defendant Dick Lam Leong ("Leong") was at all relevant times an EMT employed by Mount Sinai Morningside.

## FACTUAL ALLEGATIONS

23. Shortly after midnight on May 9, 2021, Plaintiff called 911 to report that a security guard in her Manhattan apartment building had struck her in the arm.

24. NYPD officers did not respond to the situation and Plaintiff went to sleep.

25. Later in the morning, at around 7:00 AM, Plaintiff called the NYPD's 24th Precinct to attempt to make a report. She was advised to dial 911 again.

26. Plaintiff then called 911 again.

27. Defendants Freund and Guillen came to Plaintiff's apartment.

28. When they arrived, Freund and Guillen knocked on Plaintiff's apartment door.

29. Plaintiff opened the door and spoke to Freund and Guillen at the threshold of her apartment.

30. While Plaintiff was showing the officers a video of the security guard striking her arm, the officers walked past Plaintiff into her apartment.

31. The officers did not ask to enter the apartment.

32. Plaintiff did not consent to the officers entering her apartment.

33. Once inside the apartment, Freund and Guillen stood very close to Plaintiff.

34. Plaintiff asked Freund and Guillen to stay a little farther from her as a reasonable precaution against COVID-19.

35. Officer Freund replied that the CDC had stopped requiring individuals to stay six feet apart.

36. Plaintiff then told Freund and Guillen that she felt uncomfortable with them and asked them to get the NYPD to send other officers to come take the report.

37. In response, Freund and Guillen told Plaintiff that they were not going anywhere.

38. Freund and Guillen then called for an ambulance.

39. Plaintiff did not require medical attention and told the officers she did not want to be seen by EMS or go to the hospital.

40. While Plaintiff was, understandably, unhappy about the incident with the security guard and frustrated by the officers' refusal to back away from her, she was not acting irrationally, incoherently, or in a manner that was dangerous to herself or any other person.

41. Plaintiff asked the officers if she was under arrest, and they told her she could not leave.

42. Soon after, Defendants Haag, Blossy, and Leong (the "EMT Defendants") arrived.

43. Freund and the EMT Defendants met in the hallway outside of Plaintiff's apartment and discussed the situation.

44. While in the hallway, Freund and the EMT Defendants came up with a plan to take Plaintiff to the hospital for a psychiatric evaluation.

45. During this conversation, Blossy confirmed with Freund that Plaintiff wasn't "causing any issues" in the building.

46. Freund said to the EMT Defendants, "Is she really causing a problem? No."

47. Even though all the Defendants were aware that Plaintiff was not conducting herself in a manner which was likely to result in serious harm to herself or others, they decided to force Plaintiff to go to the hospital for a psychiatric evaluation.

48. Freund and the EMT Defendants agreed that Haag would talk to Plaintiff.

49. Freund and the EMT Defendants then went back into Plaintiff's apartment.

50. Plaintiff told Haag that she did not require any medical attention and did not want to go to the hospital.

51. Defendants Freund, Guillen, Haag, Blossy, and Leong then discussed and agreed that Haag would give Freund and Guillen a signal, and then the officers would take Plaintiff into custody.

52. Guillen then told Plaintiff that she had to go to the hospital.

53. Haag also told Plaintiff that she had to go with the Defendants to the hospital.

54. Plaintiff again told the Defendants that she did not want to go to the hospital and could take the subway there herself if she needed medical attention.

55. Freund said that she could either walk with them downstairs or leave in handcuffs.

56. Freund and Guillen then jumped on Plaintiff, twisted her arms behind her back, and handcuffed her.

57. Freund, Guillen, and the EMT Defendants led Plaintiff outside of her apartment.

58. Defendants Nyberg and Pena, who were outside in the hallway, joined the escort of Plaintiff to the waiting ambulance.

59. Plaintiff complained that the handcuffs were causing pain.

60. Plaintiff explained that she has arthritis and the way she was restrained and being pulled by the officers was causing pain.

61. Plaintiff begged Defendants Freund, Guillen, Nyberg, and Pena to take off her handcuffs to alleviate the pain and avoid the humiliation of being led out of her apartment building in restraints.

62. However, the officers refused.

63. The Defendants led Plaintiff to a waiting ambulance.

64. The ambulance was owned by MSHS.

65. Plaintiff, still restrained, was picked up by Nyberg and Pena and put in the stretcher. This caused Plaintiff additional pain.

66. The EMT Defendants and Guillen took Plaintiff to Mount Sinai Morningside Hospital in the MSHS ambulance.

67. Freund met them at the hospital.

68. After examining Plaintiff and contacting Plaintiff's therapist by telephone, doctors at Mount Sinai Morningside determined that Plaintiff was not psychotic. The doctors also found no evidence of homicidal or suicidal ideations or other indication for psychiatric hold.

69. Plaintiff was released from the hospital after 4:00 PM, about nine hours after her ordeal began.

70. At no time did Plaintiff, who was 5 feet and 1 inch tall, weighed 118 pounds, and 64 years old, conduct herself in a manner which was likely to result in serious harm to herself or any other person.

71. At no time did Plaintiff express any intent to harm herself or any other person.

72. As a result of the incident, Plaintiff was deprived of her liberty and was falsely imprisoned for about nine hours.

73. The Defendants caused Plaintiff physical and emotional suffering.

74. Defendants deprived Plaintiff of her rights intentionally, knowingly, recklessly, willfully, wantonly, and/or maliciously.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Unlawful Entry Under the Fourth and Fourteenth Amendments

### (Against Defendants Freund and Guillen)

75. Plaintiff repeats and realleges each and every allegation set forth above.

76. Defendants Freund and Guillen entered Plaintiff's home without her consent, a warrant, or any circumstances justifying warrantless entry.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### False Arrest Under the Fourth and Fourteenth Amendments

### (Against Defendants Freund, Guillen, Haag, Blossy, Leong, Nyberg, and Pena)

77. Plaintiff repeats and realleges each and every allegation set forth above.

78. Acting individually and in concert, the individual Defendants deprived Plaintiff of her rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures, and to her liberty, by detaining, arresting, confining, causing the confinement, and/or continuing the confinement of Plaintiff without any privilege to do so.

79. By taking joint action with Defendants Freund, Guillen, Nyberg, and Pena, who were NYPD officers acting under color of law, Defendants Haag, Blossy, and Leong were state actors.

80. Probable cause did not exist to arrest Plaintiff for any crime, nor was Plaintiff conducting herself in a manner which was likely to result in serious harm to herself or others.

81. Plaintiff was conscious of her confinement and did not consent to it.

82. Defendants failed to intervene in each other's unlawful actions.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Excessive Force Under the Fourth and Fourteenth Amendments

### (Against Defendants Freund, Guillen, Nyberg, and Pena)

83. Plaintiff repeats and realleges each and every allegation set forth above.

84. While removing Plaintiff without her consent from her home to Mount Sinai Morningside Hospital, Defendants Freund, Guillen, Nyberg, and Pena used force that was not objectively reasonable in light of the facts and circumstances.

85. Defendants Freund and Guillen twisted Plaintiff's arms and forced her into handcuffs.

86. Defendants Freund, Guillen, Nyberg, and Pena grabbed Plaintiff's arms and refused to let go even though Plaintiff complied with their instructions, complained of pain, and told them she would walk with them to the ambulance.

87. Defendants Nyberg and Pena lifted and put Plaintiff in the stretcher with excessive force, which caused Plaintiff pain.

88. Defendants failed to intervene in each other's unlawful actions.

## FOURTH CLAIM FOR RELIEF

### False Imprisonment

### (Against All Defendants)

89. Plaintiff repeats and realleges each and every allegation set forth above.

90. All Defendants are liable to Plaintiff for false imprisonment in violation of the common law of the State of New York.

91. The City is liable to Plaintiff for the conduct of its employees Freund, Guillen, Nyberg, and Pena because they were acting within the scope of their employment during the incident on May 9, 2021.

92. Mount Sinai Morningside is liable to Plaintiff for the conduct of its employees Haag, Blossy, and Leong because they were acting within the scope of their employment during the incident on May 9, 2021.

93. MSHS is vicariously liable to Plaintiff through the acts of its agents Haag, Blossy, and Leong.

94. Because the EMT Defendants wore uniforms that stated "Mount Sinai EMS" and the ambulance, owned by MSHS, had lettering on the outside that stated "Mount Sinai Ambulance," Plaintiff believed that the EMT Defendants were acting on MSHS's behalf.

## FIFTH CLAIM FOR RELIEF

### Assault

**(Against Defendants City of New York, Freund, Guillen, Nyberg, and Pena)**

95. Plaintiff repeats and realleges each and every allegation set forth above.

96. Defendants Freund, Guillen, Nyberg, and Pena intentionally placed Plaintiff in fear of imminent harm and/or offensive contact.

97. These Defendants' conduct was not reasonable or otherwise justified.

98. As a result, Plaintiff suffered trauma and emotional distress.

99. The City is liable to Plaintiff for the conduct of its employees Freund, Guillen, Nyberg, and Pena because they were acting within the scope of their employment during the incident on May 9, 2021.

## **SIXTH CLAIM FOR RELIEF**

### **Battery**

**(Against Defendants City of New York, Freund, Guillen, Nyberg, and Pena)**

100.   Plaintiff repeats and realleges each and every allegation set forth above.

101.   Defendants Freund, Guillen, Nyberg, and Pena intentionally and wrongfully made physical contact with Plaintiff without her consent.

102.   The Defendants' conduct was not reasonable or otherwise justified.

103.   As a result, Plaintiff suffered injuries as set forth above.

104.   The City is liable to Plaintiff for the conduct of its employees Freund, Guillen, Nyberg, and Pena because they were acting within the scope of their employment during the incident on May 9, 2021.

## **SEVENTH CLAIM FOR RELIEF**

### **N.Y.C. Admin. Code § 8-801 *et seq*.**

### **Unlawful Entry**

**(Against Defendants City of New York, Freund, and Guillen)**

105.   Plaintiff repeats and realleges each and every allegation set forth above.

106.   Defendants Freund and Guillen are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

107.   Defendants violated Plaintiff's rights, under N.Y.C. Admin. Code § 8-802, to be free from unreasonable searches and seizures, by entering Plaintiff's home without her consent, a warrant, or any circumstances justifying warrantless entry.

108.   As the employer of Defendants Freund and Guillen, the City is liable for their wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

11

## EIGHTH CLAIM FOR RELIEF

### N.Y.C. Admin. Code § 8-801 *et seq*.

### False Arrest

### (Against Defendants City of New York, Freund, Guillen, Nyberg, and Pena)

109. Plaintiff repeats and realleges each and every allegation set forth above.

110. Defendants Freund, Guillen, Nyberg, and Pena are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

111. Defendants violated Plaintiff's rights, under N.Y.C. Admin. Code § 8-802, to be free from unreasonable searches and seizures, by detaining, arresting, confining, causing the confinement, and/or continuing the confinement of Plaintiff without any privilege to do so.

112. Probable cause did not exist to arrest Plaintiff for any crime, nor was Plaintiff conducting herself in a manner which was likely to result in serious harm to herself or others.

113. Plaintiff was conscious of her confinement and did not consent to it.

114. Defendants failed to intervene in each other's unlawful actions.

115. As the employer of Defendants Freund, Guillen, Pena, and Nyberg, the City is liable for their wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

## NINTH CLAIM FOR RELIEF

### N.Y.C. Admin. Code § 8-801 *et seq*.

### Excessive Force

### (Against Defendants City of New York, Freund, Guillen, Nyberg, and Pena)

116. Plaintiff repeats and realleges each and every allegation set forth above.

117. Defendants Freund, Guillen, Nyberg, and Pena are "covered individuals" as defined in N.Y.C. Admin. Code § 8-801.

118. Defendants violated Plaintiff's rights, under N.Y.C. Admin. Code § 8-802, to be free from excessive force and unreasonable searches and seizures when they used force that was not objectively reasonable in light of the facts and circumstances.

119. Defendants failed to intervene in each other's unlawful actions.

120. As the employer of Defendants Freund, Guillen, Pena, and Nyberg, the City is liable for their wrongful acts pursuant to N.Y.C. Admin. Code §§ 8-802 and 8-803.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. For compensatory damages in an amount to be determined at trial;

b. For punitive damages to the extent allowable by law;

c. For costs, disbursements, and reasonable attorneys' fees under 42 U.S.C. § 1988, N.Y.C. Admin. Code § 8-805, and the inherent powers of this Court;

d. For pre- and post-judgment interest as allowed by law; and

e. For such other and further relief as this Court deems just and proper.

Dated: August 1, 2022
    New York, NY

THE FU FIRM PLLC

By: */s/ Yan Fu*
    Yan Fu
    43 W. 43rd Street, Suite 205
    New York, NY 10036
    (212) 584-0581
    yfu@thefufirm.com
    *Counsel for Plaintiff*